UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LIBERTY PRE-SETTLEMENT FUNDING, LLC**<br>633 S. Federal Highway, 1st Floor<br>Fort Lauderdale, FL 33301,<br>　　　　　　　　*Plaintiff,*<br>　v.<br><br>**KISHON MCFARLANE**<br>510 Riverdale Avenue, Apt. 2F<br>Brooklyn, NY 11207,<br>　　　　　　　　*Defendant*. | CASE NO. 1:24-cv-9235<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff Liberty Pre-Settlement Funding, LLC ("Liberty" or "Plaintiff"), by and through its undersigned counsel, Bochetto & Lentz, P.C., hereby avers as follows in support of its Complaint against Defendant, Kishon McFarlane ("McFarlane" or "Defendant"):

**NATURE OF THE ACTION**

1. Liberty is in the business of purchasing interest(s) in contingent legal claims.

2. By virtue of its business, Liberty enters into Non-Recourse Purchase and Sale Agreements with parties involved in personal injury litigation in exchange for a portion of their verdict and/or settlement proceeds. The transactions are "non-recourse" due to the nature of the contingent fees on the personal injury cases involved and, therefore, there is no statutory limit on the applicable interest rates in the contracts because Liberty accepts the risk that there may be no recovery.

3. From 2020 to 2021, Liberty entered into three separate Non-Recourse Purchase and Sale Agreements ("Agreements") with a plaintiff involved in a personal injury lawsuit, McFarlane.

4. Liberty provided McFarlane with cash advances totaling $67,673.03 almost 4 years ago and the current balance due with interest as of November 1, 2024, is $ 226,162.17.

5. Upon acceptance of the cash advances, McFarlane became subject to the terms of the Agreements; McFarlane also explicitly signed Agreements #2 and #3 evidencing such.

6. Pursuant to the terms of the Agreements, Liberty was promised a return on their cash advance investments from the verdict, award and/or settlement of her personal injury claim.

7. As of this filing date, McFarlane's personal injury lawsuit has resulted in a settlement of $1.75 Million dollars of which, she was disbursed $1.64 million dollars, entitling Liberty to be repaid the full proceeds as outlined in the Non-Recourse Agreements.

8. Despite acknowledging that Liberty was to be paid directly out of the settlement proceeds of her personal injury case, McFarlane refuses to remit the required proceeds to Liberty.

9. Instead, McFarlane is evading remittance to Liberty and is illicitly harboring the proceeds in direct breach of the three Agreements. McFarlane has been asked in writing several times to tender the amounts due and she has refused to tender the proceeds resulting in this lawsuit being filed.

## THE PARTIES

10. Plaintiff Liberty Pre-Settlement Funding, LLC ("Liberty" or "Plaintiff") is a limited liability company that is in the business of litigation funding with an address of 633 S. Federal Highway, 1st Floor, Fort Lauderdale, FL 33301.

11. By virtue of its 100% ownership by Experity Ventures, LLC ("Experity"), which is a Delaware entity, Plaintiff Liberty Pre-Settlement Funding, LLC is deemed a resident of Delaware. The members of Experity are citizens of Florida.

12. Defendant Kishon McFarlane ("McFarlane") is an adult individual who resides at 510 Riverdale Avenue, Apt. 2F, Brooklyn, NY 11207.

## JURISDICTION AND VENUE

13. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and because the amount in controversy, exclusive of interest and costs, exceeds $75,000. And Plaintiffs are citizens of Delaware and Florida and Defendant is a citizen of New York.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in New York, and/or a substantial part of the events or omissions giving rise to the claims occurred in New York.

## ALLEGATIONS RELEVANT TO CLAIMS OR RELIEF

15. Liberty is in the business of purchasing interest(s) in contingent legal claims.

16. By virtue of its business, Liberty enters into and/or purchases Non-Recourse Purchase and Sale Agreements with plaintiffs for a "cash advance" to repaid in the event a recovery is made by the claimant in a pending personal injury case.

17. In exchange for providing a cash advance to fund their litigation, Liberty is promised a high interest return on the proceeds from the plaintiff's verdict, award, or settlement, with the remittal of monies administered in adherence to a "detailed repayment schedule" set forth therein.

### *Defendant's Breach of the Non-Recourse Purchase and Sale Agreements*

18. On February 20, 2020, Liberty executed its first Non-Recourse Purchase and Sale Agreement ("Agreement #1") with Kishon McFarlane. (Agreement #1, **Exhibit "A."**)

19. McFarlane was provided a cash advance of $10,000 and a $45,673.03 payoff amount to be used towards her personal injury lawsuit that occurred on or around June 1, 2018.

20. In exchange, McFarlane guaranteed that Liberty would possess the "right to receive certain proceeds which may result from the resolution of [her] claim." (*Id.*)

21. On Page 13 of Agreement #1, McFarlane's original representative also confirmed and further "acknowledge[d] that [Kishon McFarlane] sold . . . a portion of the proceeds which may arise from the Claim" to Liberty. (*Id.*)

22. Emik Agarunov then "agree[d] to distribute all proceeds received from the resolution of the Claim in accordance with the terms of the Agreement." (*Id.*)

23. Sometime between February 20, 2020, and November 24, 2020, McFarlane changed legal representation, engaging Ian M. Chaikin, Esquire ("Attorney Chaikin") as her new counsel in connection with her personal injury action.

24. On November 24, 2020, Liberty entered into a second Non-Recourse Purchase and Sale Agreement ("Agreement #2") with McFarlane. (Agreement #2, Exhibit "B.")

25. Under Agreement #2, Liberty provided McFarlane with an additional cash advance of $10,000 to support her ongoing personal injury lawsuit related to an incident that occurred on or around June 1, 2018.

26. On March 8, 2021, Liberty entered into a third and final Non-Recourse Purchase and Sale Agreement ("Agreement #3") with McFarlane. (Agreement #3, Exhibit "C.")

27. Under Agreement #3, McFarlane received another cash advance of $12,000 to be used toward her personal injury litigation, continuing Liberty's financial support for her case.

28. Upon resolution of McFarlane's personal injury case for in excess of $1.75 million dollars, Attorney Chaikin, in his capacity as McFarlane's attorney, disbursed the settlement proceeds of $1.64 Million to her but forgot to withhold the $ 226,162.17. due to Liberty under the contracts McFarlane signed with Liberty.

29. This distribution, however, was inadvertent; Attorney Chaikin intended to act in compliance with the Agreements but, while operating on McFarlane's behalf, mistakenly transferred 100% of the funds to her, including the funds that were owed to Liberty under its contracts with McFarlane.

30. After realizing the inadvertent nature of the disbursement, Attorney Chaikin promptly took steps to recover the funds for Liberty. Despite his efforts, McFarlane unreasonably refused to return the proceeds, retaining the funds in direct violation of her binging Agreements with Liberty. McFarlane acknowledged she had signed the contracts, but said she was keeping the money anyway.

31. 31. Upon information and belief, Defendant has now transferred possession of these funds to her son, who has subsequently placed them in a bank safe deposit box to avoid paying Liberty.

32. Each Agreement – Agreement #1, #2, and #3 – includes a separate detailed repayment schedule which reflects the agreed upon interest rates of 20%. (**Ex. "A.", "B.", "C."**)

33. Agreement #1's interest rate is 20% to be charged every six months. (**Ex. "A."**)

34. Agreement #2's interest rate is 20% to be charged quarterly. (**Ex. "B."**)

35. Agreement #3's interest rate is 20% to be charged every six months. (**Ex. "C."**)

36. Since these Agreements have been entered by and between Plaintiff Liberty and Defendant McFarlane, her personal injury case has resolved.

37. McFarlane has since received the resolution proceeds of $1.64 million dollars, but she also received the proceeds that were due to Liberty and has unreasonably refused to return them. To date, Defendant has remitted a total of zero dollars to Liberty.

38. Pursuant to Agreement #1, Plaintiff Liberty is currently owed – excluding additional interest rates as outlined on page 3 of the Agreement – $167,134.57. (**Ex. "A."**)

39. Pursuant to Agreement #2, Plaintiff Liberty is currently owed – excluding additional interest rates as outlined on page 3 of the Agreement – $22,300. (**Ex. "B."**)

40. Pursuant to Agreement #3, Plaintiff Liberty is currently owed – excluding additional interest rates as outlined on page 3 of the Agreement – $36,727.60. (**Ex. "C."**)

41. The total amount currently due from Defendant to Liberty is $ 226,162.17.

42. As of this filing date, McFarlane is evading remittance to Liberty and illicitly harboring the funds received in direct breach of Agreements #1, #2, and #3.

43. As a direct result of Defendant's evasive actions, Liberty has been damaged.

### First Claim For Relief:
### Breach of Contract

44. Plaintiff Liberty hereby incorporates by reference all prior paragraphs as if set forth fully at length herein.

45. Pursuant to Agreements #1, #2, and #3, McFarlane accepted a total monetary sum of $67,673.03 in exchange for a non-recourse property interest in her contingent legal case.

46. In exchange for the cash advances received, McFarlane assigned her "right[s] to receive certain proceeds which may result from the resolution of the claim" to Liberty. (Id.)

47. At all times relevant, McFarlane promised to remit the proceeds in compliance with Agreements #1, #2 and #3. (See generally id.)

48. McFarlane never raised any objection to the terms set forth.

49. Defendant has since received proceeds stemming from her personal injury action and has failed to remit the relevant portion to Liberty.

50. Accordingly, Defendant has directly breached Agreements #1, #2 and #3.

51.     As a result of the breaches, Liberty has been financially damaged.

52.     As a direct and proximate result of Defendant's actions, Liberty has been damaged and will continue to be damaged in an amount to be determined at trial, but in no event less than $226,162.17, plus any applicable interest, costs, and expenses which may be due.

## Second Claim For Relief:
## Conversion

53.     Plaintiff Liberty hereby incorporates by reference all prior paragraphs as if set forth fully at length herein.

54.     As set forth more fully herein, Defendant has converted – and continues to convert – the proceeds stemming from her underlying personal injury litigation.

55.     Indeed, upon information and belief, McFarlane has since transferred the monies received from her personal injury action to a privately held safety deposit box.

56.     Per the Agreements, McFarlane explicitly transferred her "right to receive certain proceeds which may result from the resolution of [her] claim" to Liberty. (Id.)

57.     Despite agreeing to remit said proceeds to Liberty – and even instructing her attorneys to forward the proceeds on her behalf – McFarlane has completely ignored this obligation and has instead opted to illicitly harbor the funds in an inaccessible safety deposit box.

58.     McFarlane has absolutely no contractual or other right to the entirety of the funds.

59.     McFarlane has absolutely no contractual or other right to hide these funds from Liberty.

60.     McFarlane's intentional conversion of the proceeds directly hurt and hinder Liberty's business.

61.     McFarlane's conduct is sufficiently willful and outrageous to warrant a substantial award of punitive damages to punish and deter her from engaging in such egregious behavior.

62. As a direct and proximate result of Defendant's actions, Liberty has been damaged and will continue to be damaged in an amount to be determined at trial, but in no event less than $226,162.17, plus punitive damages and any applicable interest, costs, and expenses which may be due.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as set forth above, together with such other and further relief as may be just and proper.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Date: December 3, 2024

BY: */s/ Gavin P. Lentz*
Gavin P. Lentz, Esquire
Albert M. Belmont, III, Esquire

1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
glentz@bochettoandlentz.com
abelmont@bochettoandlentz.com

*Attorney for Plaintiff*